

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

v.

NO. 3 : 02 CR 313 (AWT)

RAYMOND ORTIZ

AUGUST 1, 2006

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RESENTENCING PURSUANT TO *UNITED STATES OF AMERICA V. CROSBY*, 397 F.3D. 103 (2ND CIR. 2005)

### Facts / Procedural History

On February 27, 2003, Raymond Ortiz (Ray), pleaded guilty to Armed Bank Robbery in violation of 18 U.S.C. § 2113(a). On June 18, 2004, Mr. Ortiz was sentenced to 188 months imprisonment. He subsequently filed a timely appeal of his sentence. On March 4, 2005, the United States Court of Appeals granted the Defendant's Motion for a Limited Remand in light of the decision in *United States v. Crosby*, 397 F.3d. 103 (2nd Cir. 2005).

### Issue

The Court likely would have imposed a non-trivially different sentence on June 18, 2004, if the sentencing guidelines had been advisory, and not mandatory at the time.

### Discussion

Sentencing in the wake of *United States v. Booker*, 125 S. Crt. 738 (2005), and *Crosby* has dramatically changed.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

Prior to *Booker / Fanfan*, the section 3553(a) requirement that the sentencing judge 'consider' all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable guidelines range unless the statutory standard for a departure was met. Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance. *Crosby* at 111.

The fact that the mandatory implication of the Sentencing Guidelines has been abrogated is extremely important in the case at hand, because the Guidelines were something that this court heavily relied upon in fashioning Ray's sentence. Now the grounds for downward departure, which the Court found not to "take Ray's case outside the heartland", can be considered in support of Ray's request for a non guidelines sentence. Although the Court must consult the sentencing guidelines, the Court no longer has to feel straight jacketed in to sentencing a defendant within the confines of a particular guidelines range because a defendant does not meet the stringent statutory requirements for a downward departure.

In determining a sentence, a Court must impose a sentence that is, "sufficient, but not greater than necessary" to establish the purposes of sentencing contained in 18 U.S.C. § 3553(a). Ray received a lengthy sentence of 188 months to serve. In reaching this sentence, the Court applied, as it was required to do, the Federal Sentencing Guidelines. According to the lexicon set forth in the Sentencing Guidelines, the Court determined Ray to be a career offender. Having been classified as a career offender, Ray's offense level increased six levels from 28[1] to 34. After the application of acceptance of responsibility, Ray's guideline range was 188-235 months. If the level increase because of career offender were not applied, Ray would have been facing 110-137 months.

---

[1] This takes into account all the role adjustments, which increased Ray's guidelines range.

-2-

The Court gave much thought in determining an appropriate sentence for Ray and in fact was considering giving heavy weight to the factor promoting specific deterrence, prior to hearing from the defendant himself.

"The Court: And that really focused on the -- and to be honest, one of my concerns, having read the presentence report here, was specific deterrence. And looking at the amount of time that the defendant served and the fact that he still committed another crime, it would suggest that specific deterrence is a need. And if you imposed sentences at one level, the natural conclusion is you need to continue increasing the length of the sentences if you're going to specifically deter an individual."

I think the questions I'll have for you, Mr. Daily, if I can put you on the spot is: That, I think, assumes a static condition with respect to the nature of the defendant as an individual. Obviously I think that we all came to court today with a certain view that we'd come to have the defendant – have of his personal characteristics. And I'll be asking the probation officer this back in chambers, but I'm interested in – I know what Mr. Murphy's response is. But I'm interest in whether the government has seen anything here today that strikes you as being different from what I suspect you and I both came into court with today as a view of the defendant's personal characteristics." (See transcript pp. 41-42, September 25, 2003).

On June 18, 2004, the Court pronounced Ray's sentence. In addressing the Motion for Downward Departure filed by the defendant, the Court noted:

"The Court: I do credit the statements from the people at Wyatt in terms of the efforts you're making, but the fact that you're making efforts does not eliminate the possibility or likelihood that there would be further crimes committed by you in the future as well-intentioned and as well-meaning as you are at this time and as sincere in his analysis as your counsel is at this time. When I have departed on this basis in

- 3 -

the past, I have had much more compelling indicators that there is a significant overrepresentation of the likelihood that a defendant will commit crimes in the future and those types of indicators are not present in your case. I **reluctantly** conclude that this is not a case where I would depart." (See transcript pp. 15-16, June 18, 2004).

Although the Court did state that it would not have granted Ray's downward departure even if he had met the standard, the Court was basing this decision on the factors it could consider <u>at that time.</u> Ray submits that the Court would likely have imposed a nontrivially different sentence if the Sentencing Guidelines had been advisory at the time of his sentencing. Ray's Guidelines Range at the time called for a period of incarceration that was, in fact, greater than necessary. A non-guidelines sentence of ten years to serve, would not only promote the principals of sentencing, but also serve as just punishment for Ray.

### A. Ray's post conviction rehabilitation.

Ray received twice the amount of incarceration that his co-conspirator received for committing the same crime. In fact, his co-conspirator, Tomas Fontanez was responsible for committing two bank robberies. Ray received a lengthier sentence because of his prior convictions and the Sentencing Guidelines application. What the guidelines and their mandatory application failed to allow the Court to take into consideration is that most of Ray's convictions came as a result of his drug addiction and his total lack of treatment for same. He did not start receiving treatment for this addiction until he was incarcerated for the offense that he was sentenced to just before this federal case was pending.

At the time of Ray's sentencing, a person's addiction to drugs could not serve as a basis for downward departure. According to U.S.S.G. § 5H1.4 (2000), "drug or alcohol dependence is not a reasons for imposing a sentence below the guidelines.

-4-

Substance abuse is highly correlated to an increased propensity to commit crime." During sentencing, defense counsel emphasized the programs and classes that Ray took advantage of during his incarceration to support his argument that Ray would not likely reoffend and therefore was deserving of a downward departure on the grounds that his criminal history category overstated the seriousness of his past conduct or the likelihood that he would commit future crimes. Now, the Court can consider Ray's severe drug addiction in deciding whether or not to impose a non-guidelines sentence.

While this case was pending, Ray took advantage of the programs available to him in the Department of Corrections. Since being transferred to the custody of the Bureau of Prisons, he has participated in and completed a drug education program. **(See Exhibit A).** He also successfully completed a course geared toward relapse prevention, **(See Exhibit B),** in addition to many others. **(See Exhibits C-G).**

It is important to point out that Ray was considered to be a discipline problem while in the custody of the Department of Corrections during he years 1991-2000. He received 37 disciplinary infractions ranging from, intoxication, disobeying staff and even assaulting staff. (PSR, paragraph 33.) It is noteworthy that Ray has received no tickets while in federal prison. This is certainly demonstrative of not only his willingness to change, but also his ability to do so.

Since his sentencing on June 18, 2004, Ray has only increased his level of participation in programs and his implementation of the skills he learned in the programs. Attached is a copy of Ray's treatment plan he received while at USP Lewisburg.[2] This treatment plan began on November 15, 2004 and was terminated on January 6, 2006, due to successful completion. During this program, Ray received

---

[2] Ray is now confined at FCI Ray Brook, a medium level facility, thereby having lowered his level from a United States Penitentiary.

- 5 -

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

reviews every 90 days. During each review his counselor had something positive to say about him.

At his first review on 2/15/2005, Ray's counselor stated that, "[he] appears to taking the change process seriously as evidenced by the absence of incident reports, his conduct on the unit and his participation in group sessions."

On 8/9/2005, his counselor noted that, "Ray continues to make positive strides towards pro-social change by demonstrating tolerance in difficult situations. This was most recently displayed on his job where he incorporated proper communication skills with a staff member to avoid an incident. He has made exceptional strides in his progress for pro-social change and continues to seek improvement." **(See Exhibit H).**

In the case of *United States v. Green*, 152 F. 3d. 1202, 1208 (9th Cir. 1998), the Court held that a District Court had the discretion to grant a downward departure for post sentencing rehabilitative efforts.

> We conclude, consistent with the three other circuits to analyze this issue, that post-sentencing rehabilitative efforts may be a basis for a downward departure. Several circuits have already determined that post-offense rehabilitation may be a basis for departure. Like the Second Circuit, we cannot ascertain any meaningful distinction between post-offense and post-sentencing rehabilitation. Nor is there support in the Guidelines for the proposition that a court is forbidden from looking at a defendant's rehabilitative efforts upon resentencing. Given the intervening Supreme Court decision in *Koon*, the categorical rule set forth in *Gomez-Padilla* is no longer appropriate. ....There is no case law suggesting what a defendant must do to demonstrate the level of rehabilitation that takes his case out of the heartland of the Guidelines. The Second Circuit suggests that "a highly successful rehabilitation is not taken into consideration appropriately ('in kind and degree')" by the Sentencing Guidelines.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

The case of *United States v. Kane*, 88 Fed. Supp. 2d 408, 412 (E.D.Pa. 2000), is also dispositive of this Court's ability to grant a downward departure or now sentence a defendant to a non-guidelines sentence in light of his post conviction rehabilitation. Like Ray, the defendant in *Kane* was also facing between 188-235 months imprisonment. He too, was a career offender in light of his previous convictions for burglary. Like Ray, [Kane] also had a severe drug addiction. However, unlike Ray, who was incarcerated from the time he was indicted until the time he was sentenced, [Kane] was able to attend a drug rehabilitation program, in addition to AA and NA meetings. In is important to note that [Kane's] pretrial services report was not perfect, and the Court took notice of this fact. In granting [Kane's] Motion for Downward Departure the court noted:

> Drug treatment is an extremely difficult process, and it is not likely that anyone who has abused drugs for as many years as Mr. Kane would be able immediately to abandon all aspects of his former life, regardless of his good intentions. As another opinion stated in addressing the situation of a long-time addict: "Fourteen years of heroin addiction cannot be cured overnight. The process is gradual and trying, requiring both mental and physical support." *United States v. Maier*, 777 F.Supp. 293, 294 (S.D.N.Y.1991).

Now that Ray has the drug treatment he needed so badly, this will reduce his chance of recidivism once he is released. It is unfortunate, because like so many defendants the court sees, who are given a chance during pretrial release to show the Court how they can change, Ray was unable to have this privilege. Ray has taken advantage of whatever programs he can while he has been incarcerated at the Bureau of prisons. Even before the decisions in *Booker* and *Crosby*, a court saw fit to grant a downward departure to a defendant who made strides towards addressing his drug addiction. Like Ray, this defendant had been incarcerated during the pendency of his case.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

> But when a defendant who has been in federal custody since his arrest has had no opportunity to pursue any rehabilitation, when he has been admitted to a selective and intensive inmate drug treatment program, and when a sentence within the guideline range would effectively deprive him of his only opportunity to rehabilitate himself while incarcerated, we think a departure is within the district court's discretion. If the Sentencing Commission did not give adequate consideration to the mitigating circumstance of drug rehabilitation generally, *Maier*, 975 F.2d at 948, it certainly did not consider the unique constellation of mitigating circumstances in this case. *U.S. v. Williams*, 65 F.3d. 301, 306 (2nd Cir. 1995).

In the case of *U.S. v. Carvajal*, 2005 WL 476125, a Court sentenced a defendant to a non-guidelines sentence having found that sentencing the defendant to the recommended career offender guidelines range would call for a sentence that was greater than necessary.

> Rehabilitation is also a goal of punishment. 18 U.S.C. § 3553(a)(2)(D). That goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are all created in the image of God. A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of punishment. *Id.* at 6.

**B. The Court can award Ray credit for time served:**
  1. **Because of the delay in his being indicted and subsequently arrested; and**
  2. **Because his conviction for Criminal Possession of a Weapon involved the same weapon used in the instant offense.**

The crime that Ray committed which brought him before this Court, took place on 4/26/2000. Ray was not indicted for this crime until 10/31/2001, almost one year and a half later, despite the fact that Tomas Fontanez had informed the police

-8-

on 6/6/2000 that Ray participated in the bank robbery with him. Additionally, Angel Vargas identified Mr. Ortiz in a photo lineup at the Wethersfield Police Department on October 21, 2000.

Going further, Ray was not arrested for this crime until over one year after he was indicted, on 11/21/2002. All the while, Ray remained in the Department of Corrections. The delay in his being indicted and thereafter, not arrested until over one year later, caused Ray to lose the possibility of a concurrent sentence.

In the case of *United States v. Sanchez-Rodriguez*, 161 F.3d. 556, 564 (9th Cir. 1998), the Court of Appeals held that,

> The lost opportunity to serve more of one's state term concurrent with one's federal term is a factor unmentioned by the Guidelines. Departure based on an unmentioned factor is permissible if the factor takes the case out of the heartland of the Guidelines. *Koon*, 518 U.S. at 94, 116 S.Ct. 2035. We cannot say that it was an abuse of discretion for the district court to conclude that Sanchez-Rodriguez's lost opportunity takes this case out of the heartland of the Guidelines and to grant departure on this basis in this case. The district court noted that the delay in charging and sentencing Sanchez-Rodriguez resulted in a lost opportunity to reduce his total time in custody and was "entirely arbitrary," a circumstance warranting departure. We have held in analogous circumstances that departure is warranted if a harsher sentence is imposed because of the "fortuity of delay."

On 7/11/2000, Ray was sentenced by the Superior Court to serve a three-year sentence for Criminal Possession of a Firearm. This crime involved him possessing the very firearm that was used in the bank robbery, for which Ray stands before this Court.

In the case of *United States v. Kiefer*, 20 F.3d. 874, 877 (8th Cir. 1994), the Court remanded the case to the District Court for possible resentencing finding that the Court cold have downward departure to ensure that the defendant received credit for his state sentence. In so doing, the Court of Appeals raised an issue that is

-9-

pertinent to Ray's case. The defendant was arguing that he should have received a downward departure to account for the time he served in state prison because the state crime was part of the same course of conduct as the federal crime. The Court of Appeals went beyond that in its decision.

> In doing so, we note a further sentencing complexity the parties seem to have overlooked. Two weeks before he robbed the St. Paul restaurant, Kiefer robbed a bingo parlor in Fargo, North Dakota. In July 1992, he was convicted of robbery in North Dakota state court and sentenced to serve four years in prison concurrently with the Minnesota sentence here at issue. Unlike the Minnesota robbery, the North Dakota robbery did not involve the same conduct as Kiefer's federal firearms offense. Thus, even if the time served for the Minnesota robbery could be applied against his § 924(e)(1) mandatory minimum sentence, an additional question is whether the time served from July 1992 until his federal conviction in May 1993-which he was serving for his North Dakota conviction as well-may reduce his mandatory minimum federal sentence under § 5G1.3. See, e.g., *United States v. Darud*, 886 F.2d 1034, 1035-36 (8th Cir.1989), *cert. denied*, 493 U.S. 1031, 110 S.Ct. 747, 107 L.Ed.2d 764 (1990).

## C. Ray's tragic personal history and lack of guidance as a youth.

Ray was one of seven children in a family that resided in the inner city. Unlike children in more affluent areas of the state, Ray was not afforded a life replete with opportunities. He was afforded a chance to see what life in the North End of Hartford first hand. Ray had no contact with his father while growing up. His eldest brother was killed in a car accident when he was 20. Ray was especially close with him, and suffered greatly from this loss, as he not only lost his companion, but his role model.

In the case of *United States v. Lopez*, 938 F.2d 1293, 1297-99 (D.C.Cir. 1991), the Court of Appeals remanded the case back to the District Court to allow the Court to

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

consider the defendant's tragic family history and exposure to domestic violence in addition to other factors concerning the defendant's childhood years.

In so holding, the Court concluded that,

> It is undoubtedly true that individuals in certain social strata are apt to be exposed to far more violence and human ugliness than those who enjoy more privileged lives, but the court erred in concluding that all the experiences he described as "tragic" fell within the rubric of "socio-economic status." Part H of the *Guidelines Manual* is concerned with "specific offender characteristics." The characteristics listed in section 5H1.10, namely race, sex, national origin, creed, religion, and socio-economic status, are all objective; they reflect the kind of data that might be found in a census taker's checklist. They do not take cognizance of the traumatic experiences to which offenders of whatever characteristics might have been exposed.

## Conclusion

Every defendant that is sentenced before a court has a history that is unique to that person. Ray had an extremely difficult childhood. He grew up in a neighborhood where he had to protect his possessions, including the sneakers he wore on his feet. He is striving toward change. This is documented in the information included in this memorandum. It is Ray's hope that the Court will see this change and resentence him to a non-guidelines sentence, as the sentence mandated by the Sentencing Guidelines is greater than necessary. Ray urges the Court to reconsider the sentence it imposed on June 18, 2004, when the Sentencing Guidelines were mandatory, and resentence him to a non-guidelines sentence of 120 months.

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771

RESPECTFULLY SUBMITTED

RAYMOND ORTIZ
DEFENDANT,

By:_____
Bethany L. Phillips
FedBar # ct19802

## CERTIFICATION

I hereby certify that a copy of the foregoing was delivered in accordance with the local rules of practice and procedure to the following persons and / or entities named below on this 1st day of August, 2006:

Hon. Alvin W. Thompson
United States District Court
450 Main Street
Hartford, CT 06103

Thomas Daily, Esq.
United States Attorney's Office
450 Main Street
Hartford, CT 06103

Michael Guglielmo
United States Probation Office
157 Church Street, 22nd Floor
New Haven, CT 06511

Raymond Ortiz
FCI – Raybrook
P.O. Box 300
Raybrook, NY 12977

By:_____
Bethany L. Phillips
FedBar # ct19802

Advocates Law Firm, LLC • 11 Franklin Square • New Britain, CT 06051 • FAX 860-348-1942 • 860-348-1900 • Juris No. 412771