UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 3:02CR313(AWT) |
| | : | |
| RAYMOND ORTIZ | : | SEPTEMBER 5, 2006 |

**GOVERNMENT'S MEMORANDUM IN AID
OF POST-*CROSBY* PROCEEDINGS ON REMAND**

The Government respectfully submits this memorandum in response to the Court's Order dated May 6, 2006, directing the parties to file written submissions on whether the Court should have imposed a nontrivially different sentence if, at the time of sentencing, it had understood sentencing law as subsequently explained by the Supreme Court in United States v. Booker, 125 S.Ct. 738 (2005), and the Second Circuit in United States v. Crosby, 397 F.3d 103, (2d Cir. 2005). As discussed more fully below, because a nontrivially different sentence should not be imposed in this case, re-sentencing is not appropriate.

**I.     Procedural History**

On October 31, 2002, a federal grand jury returned a two-count indictment charging the defendant, Raymond Ortiz, with Armed Bank Robbery, in violation of Title 18, United States Code, Sections 2113(a) and (d), and Use of a Firearm During and in Relation to a Crime of Violence, in violation of Title 18, 18 United States Code Section 924(c)(1). On February 27, 2003, the defendant pleaded guilty to Count One of the Indictment charging him with armed bank robbery and acknowledged that on April 26, 2000 he entered the Webster Bank on Franklin Avenue in Hartford carrying a sawed-off shotgun, ordered people to the floor, and robbed the bank. He and his accomplice stole $22,554.

The Court held a sentencing hearing on September 25, 2005, and heard extensive argument from counsel in regard to various issues, including the defendant's motion for a downward departure on the grounds that the defendant's criminal history category overstated the seriousness of his criminal history and his risk of recidivism. The Court continued the sentencing and ordered a psychological evaluation of the defendant, in part to address the Court's questions in regard to the defendant's criminal history and the likelihood of his recidivism, specifically as it related to the need for a sentence to provide specific deterrence. The defendant was evaluated by Dr. Anthony Campagna, who prepared for the Court a report dated June 14, 2004. At the continued sentencing hearing on June 23, 2004, the Court carefully considered all of the relevant sentencing factors in this case and sentenced Mr. Ortiz principally to 188 months of imprisonment.

On June 23, 2004, the defendant timely filed a notice of appeal.

On October 21, 2004, counsel for the defendant filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), concluding that there was no non-frivolous issue to be raised on appeal. The Government filed its motion for summary affirmance on November 5, 2005.

On March 4, 2005, the United States Court of Appeals for the Second Circuit granted the defendant's motion, which had been made with the Government's consent, to remand the case to the district court "for a determination of whether he is entitled to be resentenced" in light of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), and the Court of Appeals' decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

## II.    Purpose of *Crosby* Remand

In Booker, the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531

(2004). As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. §3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." Id. at 765-66.

In Crosby, the Court of Appeals determined that it would remand most pending appeals involving challenges to sentences imposed prior to Booker "not for the purpose of a required resentencing, but only for the more limited purpose of permitting the sentencing judge to determine *whether* to resentence, now fully informed of the new sentencing regime, and if so, to resentence." Crosby, 397 F.3d at 117. In this respect, the Court of Appeals explained that a remand would be necessary to learn "whether a sentencing judge would have imposed a materially different sentence, *under the circumstances existing at the time of the original sentence*, if the judge had discharged his or her obligations under the post-Booker/Fanfan regime and counsel had availed themselves of their new opportunities to present relevant considerations." Id. (emphasis added).

This statement of the purpose for Crosby remands makes clear that certain issues are simply irrelevant to this Court's determination whether to re-sentence. Specifically, because this Court must determine whether to re-sentence based on "the circumstances existing at the time of the original sentence," id., arguments relating to post-sentencing factors are irrelevant. In short, the court must determine whether it would have imposed a non-trivially different sentence if the Sentencing Guidelines had been advisory at the time of the original sentence, and under the circumstances existing at the time of the original sentence.

**III.   Discussion**

There is simply no compelling reason for the District Court to hold a re-sentencing in this case because the Court carefully considered all of the relevant sentencing factors at the time of the original sentencing – and clearly expressed its view as to why its sentence of 188 months was appropriate for the defendant.

Sentencing in the post-Booker regime, as explained in Crosby, now involves two analytic stages: first, a determination of the applicable Guidelines range (including any departures); and second, a determination of whether in light of the Guidelines and the other factors listed in 18 U.S.C. §3553(a), there is any reason to impose a non-Guidelines sentence. Crosby, 397 F.3d at 113.

Recently, the Second Circuit further defined the role of the United States Sentencing Guidelines in the imposition of a reasonable sentence under 18 U.S.C. § 3553(a), and the extent of the district court's discretion in imposing a non-Guideline sentence. In United States v. Rattoballi, 452 F.3d 127 (2d Cir. 2006), the Second Circuit reiterated that while the sentencing guidelines are no longer mandatory, the district courts have a duty to consider them along with the other factors set forth in 18 U.S.C. § 3553(a). Id. at 132. The Rattoballi court emphasized, however, that "*Booker* did not signal a return to wholly discretionary sentencing." Id. (citing U.S. v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005)). "While district courts enjoy discretion following *Booker,* that discretion must be informed by the § 3553(a) factors; a district court cannot import its own philosophy of sentencing if it is inconsistent with the § 3553(a) factors." Id. (Internal quotations omitted). More succinctly, Rattoballi impressed that the circuit court's "review for reasonableness, though deferential, will not equate to a 'rubber stamp.'" Id.

The Second Circuit has made it clear that the sentencing guidelines continue to play an

integral (and unavoidable) role in the district court's calculation of a reasonable sentence. In fact, Rattoballi suggests that the sentencing guidelines should weigh more heavily than other statutory factors in calculating an appropriate sentence. "In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress." Id. at 133. "The guidelines cannot be called just 'another factor' in the statutory list because they are the only integration of the multiple factors and, with important exceptions, their calculations were based upon the actual sentences of many judges." Id. (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 518 (1st Cir.2006)). "It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider." Rattoballi, at 133. Thus, the range recommended by the guidelines should be given significant deference by the sentencing court as the guidelines have already contemplated many of the statutory factors in § 3553(a).

A review of the record in this case including the sentencing transcript and the PSR, demonstrates that the Court already engaged in such an analysis. During the course of the sentencing proceedings the Court carefully considered the Guidelines issues argued by the defendant as well as the defendant's numerous arguments for downward departure. In fact, the Court continued the sentencing and ordered a psychological evaluation of the defendant to assess his likelihood for recidivism and thus the appropriateness of his designation as a career offender under the Sentencing Guidelines. After that extensive review the Court concluded that the defendant did not meet the standard for a downward departure for overstated criminal history, and even if he did the Court would not exercise its discretion to do depart in this case. The Court noted the sentencing factors of just punishment and general deterrence as supporting a sentence of 188 months, the bottom of the

defendant's applicable guideline range as a career offender, as an appropriate sentence.

The bulk of the defendant's submission focuses on the defendant's post-sentencing rehabilitation as a grounds for resentencing. However, as noted above, under United States v. Crosby, a judge may not consider post-sentencing rehabilitation in deciding whether to resentence a defendant after Booker/Fanfan. See Crosby, 397 F.3d at 118 n.19 ("If, *based solely on the circumstances that existed at the time of the original sentence*, the sentencing judge decides to resentence . . . .") (emphasis added). The Government also notes, that since November 1, 2000, the Sentencing Guidelines have not allowed judges to take post-sentencing rehabilitation into account when resentencing a defendant. Section 5K2.19 reads:

> Post-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense. (Such efforts may provide a basis for early termination of supervised release under 18 U.S.C. § 3583(e)(1).)

U.S.S.G. § 5K2.19 (2004) (amendment effective November 1, 2000). In its Commentary to this provision, the Sentencing Commission explains that a departure based on post-sentencing rehabilitation is inappropriate "because such a departure would (1) be inconsistent with the policies established by Congress under 18 U.S.C. § 3624(b) [permitting the Bureau of Prisons to award good-time credits] and other statutory provisions for reducing the time to be served by an imprisoned person; and (2) inequitably benefit only those who gain the opportunity to be resentenced *de novo*." U.S.S.G. § 5K2.19, Commentary (2004). In its reasons for the amendment, the Sentencing Commission expanded upon its commentary, and reiterated the danger that such downward departures would "inequitably benefit only those few who gain the opportunity to be resentenced *de novo,* while others, *whose rehabilitative efforts may have been more substantial*, could not benefit simply because

they chose not to appeal or appealed unsuccessfully." *See* U.S.S.G. § 5K2.19, amt. 602, Reason for Amendment (2000) (emphasis added). These same dangers are present here. For the same reasons, post-sentencing rehabilitative efforts should not be considered in fashioning any non-guideline sentence, even if a resentencing was granted. The Government reserves its arguments in this regard, but reiterates that in no way should any post-sentencing rehabilitation be considered in this limited Crosby remand to determine whether to resentence the defendant.

The defendant's argument that he could have been credited for time served at the time of the original sentencing (because of the delay in his being indicted and for possession of the same firearm subject of a State sentence) was not raised at the time of sentencing and for good reason; it has no support in fact or under the law of the Second Circuit. The fact is, that while the instant crime was committed with a sawed-off shot gun, that may or may not have been the same firearm he later used in another incident, his federal conviction was for armed bank robbery, not simple possession of a firearm. Fortunately for Mr. Ortiz, the Government, as part of his plea agreement, agreed to dismiss the charge in Count Two of the Indictment, use of a firearm during and in relation to a crime of violence, in violation of Title 18, United States Code Section 924(c)(1), for he faced a possible additional consecutive term of ten years imprisonment for that offense. At any rate , it was not raised at the original sentencing in this matter.

The defendant's other arguments regarding his personal history and lack of guidance as a youth were considered by the Court at the time of sentencing in determining where in the guideline range to sentence the defendant, but do not amount to the level that would compel imposing a non-guideline sentence under Rattoballi. These factors are taken into consideration when the Sentencing Commission fashioned the ranges set forth in the Sentencing Guidelines. The Court imposed the

7

sentence of 188 months as a sentence necessary to be just punishment and to provide general deterrence. There are no factors which would suggest that some lesser sentence would have been appropriate, and, therefore, a guidelines sentence is reasonable in this case. Accordingly, because a nontrivially different sentence should be not imposed, the Court should decline to re-sentence the defendant in this matter.

### III.     CONCLUSION

The Court imposed a sentence of 188 months' incarceration, which was at the bottom of the 188 to 235 month guideline range. The critical inquiry at this junction is whether the Court would have imposed a nontrivially different sentence than the 188 months had it known that the sentencing guidelines were advisory, not mandatory. Based on the argument set forth above, the Court should re-affirm its prior sentence and decline to re-sentence the defendant, in light of the advisory guidelines range and the other factors set forth in 18 U.S.C. § 3553(a), and place on the record an "appropriate explanation" for such decision.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

/s/

THOMAS V. DAILY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct03467
450 Main Street
Hartford, CT 06103
(860) 947-1101

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was mailed this 5th day of September, 2006, to the following:

Bethany Lynne Phillips, Esq.
Advocates Law Firm
11 Franklin Square
New Britain, CT 06051-2604

__/s/_____
THOMAS V. DAILY
ASSISTANT UNITED STATES ATTORNEY